IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SONYA C. PARKER,                    :
                                    :
     Plaintiff,                     :
                                    :
v.                                  :        CIVIL ACTION 07-0206-M
                                    :
MICHAEL J. ASTRUE,                  :
Commissioner of                     :
Social Security,                    :
                                    :
     Defendant.                     :


MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 12). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 16).  Oral argument was heard on October 29, 2007.  Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Ser-

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richard- son v. Perales*, 402 U.S. 389, 401 (1971). The substantial evi- dence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born September 20, 1962. At the time of the administrative hearing, Parker was forty-three years old, had less than a high school education (Tr. 231), and had previous work experience as a hospital cafeteria worker and a cashier (Tr. 232-33). In claiming benefits, Plaintiff alleges disability due to a back injury and depression (Doc. 12 Fact Sheet).

The Plaintiff filed protective applications for disability benefits and SSI on December 29, 2004 (Tr. 46-50, 210-12). Benefits were denied following a hearing by an Administrative Law Judge (hereinafter *ALJ*) who determined that although she could not perform her past relevant work, there were specific jobs in the national economy which she could perform (Tr. 9-22). Plaintiff requested review of the hearing decision (Tr. 8) by the Appeals Council, but it was denied (Tr. 4-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Parker alleges

2

that:  (1) The ALJ did not properly consider the opinions and
conclusions of her treating physician; (2) the ALJ improperly
determined that her mental impairment was not severe; (3) the ALJ
did not state what weight he was giving all of the evidence of
record; (4) the ALJ did not properly evaluate her pain; and (5)
the ALJ did not ask the vocational expert (hereinafter *VE*) if her
testimony was in conflict with the *Dictionary of Occupational
Titles* (hereinafter *DOT*) (Doc. 12).  Defendant has responded
to—and denies—these claims (Doc. 13).  The evidence of record
follows.

Plaintiff was seen by Dr. Genessa Williams at Family
Practice Associates beginning on July 21, 2003 (*see generally* Tr.
159-64).  On June 28, 2004, the doctor noted that Parker was
requesting a note to take time off from work as her back was
bothering her; she also requested a refill of her Flexeril[1] (Tr.
160).  After noting chronic low back pain, the doctor supplied
the requested note and prescription as well as prescriptions for
Neurontin[2] and Ultracet[3] (*id.*).  Williams also referred Plaintiff
to Dr. McGinley, an Orthopaedist.  On August 24, the doctor noted

---

[1]*Flexeril* is used along with "rest and physical therapy for
relief of muscle spasm associated with acute, painful musculoskeletal
conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

[2]*Neurontin* is used in the treatment of partial seizures.
*Physician's Desk Reference* 2110-13 (52nd ed. 1998).

[3]*Ultracet* is made up of acetaminophen and tramadol and is used
for the short-term (5 days or less) management of pain.  *See*
http://health.yahoo.com/drug/d04766A1#d04766a1-whatis

3

the patient's complaints of low back pain and displeasure with Dr. McGinley (Tr. 160).[4]  On September 7, Dr. Williams noted "spasm in the lumbosacral region bilaterally and [that] straight leg raises are positive bilaterally," though there was no vertebral tenderness or neurological deficits; the doctor decided to refer Plaintiff to a Neurologist (Tr. 159).  Samples of Flexeril were given to Plaintiff on December 8, 2004 (*id.*).

    Medical records from Dr. Robert B. McGinley, with the Orthopaedic Group, indicate that he saw Parker on June 14, 2004 and noted that she had suffered an on-the-job accident five years earlier and experienced intermittent lower back pain which had begun to radiate into the right leg (Tr. 130; *see generally* Tr. 128-35).  His examination revealed full back and hip motion with no neurologic deficit; he noted that a lumbar spine series was normal (Tr. 130).  McGinley gave Parker an epidural steroid injection which was to be followed by two weeks of therapy; she was not to work for three weeks.  On August 13, the Orthopaedic noted that Plaintiff still complained of pain, though she had not been on a regular exercise program; he recommended a general fitness program and found that she could "return to light duty work with a 10 lb lifting limit" (Tr. 129).  On September 10, McGinley noted continued complaints though there was full hip and

---

[4]The Court notes that Dr. Williams also treats Plaintiff for other medical complaints.  However, as they are not relevant to the issues before this Court, they will not be discussed herein.

back motion and negative straight leg raising; he noted an MRI
report from June 2003 which indicated an L5-S1 bulge with no
nerve root impingement (Tr. 128).  The doctor stated that
Plaintiff was getting physical therapy through another doctor,
though he expressed the opinion that an independent strengthening
program was a better option; McGinley again stated that she could
work, with the ten-pound lifting limitation, and said that he
would see her again on an as-needed basis.

Records from USA Knollwood Park Hospital show that Parker
received physical therapy from July 27 through October 11, 2004
(Tr. 136-58).  The initial evaluation revealed that Plaintiff had
full strength and range of motion though all back motions
produced low back pain without radiculopathy (Tr. 155).  Parker
apparently underwent eleven sessions.  In the second and third
sessions, she indicated that her pain was eight on a ten-point
scale (Tr. 147); in the next to last one, she said that she had
no pain (Tr. 137).  On the last visit, Parker indicated that her
pain was under good control (*id.*).

Dr. Brent Faircloth, a Neurologist with the Coastal
Neurological Institute, examined Plaintiff on October 14, 2004
and found all of her reflexes to be normal and that she had full
strength in both upper and lower extremities; she had full
rotation, extension, and flexion in her cervical spine though she
had limited extension and flexion in her lumbar spine because of

5

back pain (Tr. 176-77; *see generally* Tr. 165-77, 190-93).  The
doctor's plan was to increase activity; no surgery was planned
though mention was made of an artificial disc (Tr. 177).  Dr.
Edward Schnitzer, who specialized in Physical Medicine and
Rehabilitation with Coastal Neurological Institute, examined
Parker on November 14 and found her in no apparent distress,
generally, and that she had normal range of motion in her neck
(Tr. 172-73).  Flexion and extension motions in her trunk were
limited; also, there were slightly decreased lateral bending and
torsional movements bilaterally.  Heel and toe walking were
satisfactory; straight leg raising was negative.  Schnitzer noted
hyperlordosis in the lumbar area when standing.  The doctor also
noted "some point tenderness over the L5-S1 spinous process" as
well as "exquisite tenderness over the right sacroiliac joint"
(Tr. 173).  Dr. Schnitzer's impression was as follows:  lumbar
disk herniation at L5-S1 with associated degenerative disk
disease; chronic low back pain with sciatica; and clinical
evidence suggesting right sacroiliac dysfunction.  The doctor
prescribed Celebrex[5] for generalized pain and Skelaxin[6] for

---

[5]*Celebrex* is used to relieve the signs and symptoms of
osteoarthritis, rheumatoid arthritis in adults, and for the management
of acute pain in adults.  *Physician's Desk Reference* 2585-89 (58th ed.
2004).

[6]*Skelaxin* is used "as an adjunct to rest, physical therapy, and
other measures for the relief of discomforts associated with acute,
painful musculoskeletal conditions."  *Physician's Desk Reference* 830
(52nd ed. 1998).

muscle spasms (Tr. 174).  The doctor recommended that Parker not
work for three-to-four weeks and that she undergo a course of
physical therapy (id.).  On January 11, 2005, Dr. Schnitzer
performed some nerve conduction studies on the bilateral lower
extremities which were normal (Tr. 165).  On February 28, 2005,
Schnitzel examined Plaintiff for constant right leg pain; though
the examination was essentially normal, he prescribed Neurontin
and Ultracet (Tr. 192).  On May 25, Parker complained of low back
and right leg pain; Schnitzel again refilled the prescriptions
for Neurontin and Ultracet (Tr. 190).

Plaintiff was seen by Dr. Joseph N. M. Ndolo, an Internist,
from May 30, 2005 through February 3, 2006, primarily for back
pain (Tr. 194-203, 205).  On May 30, 2005, following a physical
examination, DR. Ndolo's impression was as follows:  chronic low
back pain; muscle spasms in the low back; a herniated disc in the
lumbar spine; depression; bilateral sciatica; degenerative disc
disease in the lumbar spine; and sleep disturbance (Tr. 199).
The doctor told Parker to take her medications, perform back
muscle exercises, and avoid heavy lifting.  On June 20, Ndolo's
examination revealed tenderness over multiple triggers points in
her lower back and muscle spasms in the sacroiliac and hip joints
(Tr. 196).  On October 19, Plaintiff complained of pain in her
lower back, rating it at ten on a ten-point scale, and an
inability to sleep for several days; Ndolo's examination again

revealed tenderness over multiple triggers points in her lower back as well as tenderness in the sacroiliac and hip joints (Tr. 195).  The doctor gave Parker an injection; she reported that her pain was reduced to a three within minutes.  Dr. Ndolo wrote prescriptions for Skelaxin, Zoloft,[7] and Lunesta[8] and told her to increase her aerobic and stretching exercises, to avoid activities which would aggravate her pain, and to return in six weeks as a follow-up, but sooner if she had any problems.  Parker returned to see the doctor on February 3, 2006, complaining of back pain and requesting Flexeril; he found her back tender and wrote prescriptions for Neurontin, Lunesta, Zoloft, and Ambien[9] (Tr. 194).  Dr. Ndolo again encouraged Plaintiff to exercise.

Records from the Mobile Mental Health Center show that Parker was first seen on June 13, 2005 by Therapist Debbie Carmichael for complaints of depression of four-months duration; prescriptions for Lexapro and Zoloft had been of no benefit (Tr. 189; *see generally* Tr. 178-89).  Plaintiff stated that she was suicidal though she agreed not to hurt herself.  Parker was seen on July 15 by Dr. Barry Amyx, Psychiatrist, who found her to have

---

[7]*Zoloft* is "indicated for the treatment of depression." *Physician's Desk Reference* 2229-34 (52nd ed. 1998).

[8]Eszopiclone, marketed under the brand-name *Lunesta*, is used as a treatment for insomnia.  *See* http://en.wikipedia.org/wiki/Eszopiclone

[9]*Ambien* is a class IV narcotic "indicated for the short-term treatment of insomnia."  *Physician's Desk Reference* 2884 (54th ed. 2000).

normal behavior and an appropriate affect; she had logical and
coherent thoughts and was no longer thinking of hurting herself
(Tr. 186-88).  The doctor characterized Plaintiff's insight to be
sophisticated; his diagnosis was mood disorder.  The psychiatrist
prescribed no medications but told her to return in six weeks if
her Zoloft prescription was not refilled.  Carmichael saw Parker
again on August 2, 2005 and devised a treatment plan for her
depression (Tr. 181-85).  On October 18, Plaintiff was seen by
Dr. Amyx who found her to be acting appropriately, thinking
logically, and not suicidal; he prescribed more Zoloft and told
her to see him again in fourteen weeks (Tr. 180).  On February
14, 2006, the Psychiatrist made the same report, refilled
Parker's prescription, and told her to return in sixteen weeks
(Tr. 179).  On March 27, Therapist Carmichael reported that
Plaintiff had started taking classes to get her GED; Parker said
that she was content (Tr. 178).

     On July 11, 2006, Dr. Amyx completed a mental residual
functional capacity form in which he indicated that Parker had
marked restrictions as far as her activities of daily living and
in maintaining social functioning; he further indicated that she
had frequent deficiencies of concentration, persistence, or pace
resulting in frequent failure to complete tasks in a timely
manner (Tr. 206-07).  It was the Psychiatrist's opinion that
Plaintiff had marked episodes of deterioration which would cause

her to withdraw from a work situation; furthermore, in a work setting, she would be markedly limited in her ability to: understand, carry out, and remember instructions; respond appropriately to supervisors and co-workers; and perform simple tasks. Dr. Amyx further indicated that Plaintiff would be extremely limited in her ability to perform repetitive tasks; he indicated that Plaintiff had suffered these limitations for a period of two years.

At the evidentiary hearing, Plaintiff testified that she could walk, at most, half of a block (Tr. 230; *see generally* Tr. 226-48). Parker stated that she had hurt her back while loading dishes from a dirty cart several years earlier and had not worked since then. Plaintiff gets shots in her back that help with the pain; she also takes medications. She also has numbness and pain that radiates into both legs. Approximately a year earlier, she became depressed and suicidal and sought treatment; she takes medications which cause her to be drowsy. She has to lie down four days a week because of the medications. Plaintiff testified that she exercised when she could; she is able to care for her personal needs. Parker stated that the medications and therapy have improved her depression but that, at times, she could be depressed for as long as two weeks at a time with an inability to do anything.

Sue Berthaume testified as a VE at the evidentiary hearing

10

(Tr. 248-52).  When asked by the ALJ if there were any jobs at the light work level that required lifting of no more than ten pounds, the VE named the jobs of parking lot attendant, produce or small-item sorter, and school security guard.  The VE stated that Plaintiff would not be able to perform these jobs if she had to lie down for several hours a day or became so depressed she could not leave the house for days at a time.

Plaintiff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's physicians.  Parker specifically refers to the opinions of Dr. Amyx (Doc. 12, pp. 7-9).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[10] *see also* 20 C.F.R. § 404.1527 (2007).

The ALJ assigned no weight to the Dr. Amyx's opinions for the following reasons:

> First and foremost, the opinion on the questionnaire is grossly inconsistent with Dr. Amyx's own office notes.  Secondly, the

---

[10]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

form indicates that these extraordinary
debilitating symptoms had existed 2 years.
Yet, when the claimant initially presented to
the mental health clinic in June 2005 she
reported being depressed for only 4 months,
and there is no evidence that Dr. Amyx had
ever seen the claimant before July 2005.  In
fact, the record reflects that Dr. Amyx saw
the claimant on only three occasions from
July 2005 to February 2006.  Moreover, there
is no evidence that Dr. Amyx had seen the
claimant in 5 months prior to completing the
form; and by his own admission, no
psychological evaluation was conducted when
the form was completed.

(Tr. 15).  The Court notes that the ALJ is correct on all of

these points and would add that there is no other medical

evidence of record to support the limitations suggested by Dr.

Amyx.  The Court finds that the ALJ's rejection of Dr. Amyx's

conclusions is supported by substantial evidence.

Parker next claims that the ALJ improperly determined that

her mental impairment was not severe (Doc. 12, pp. 3-6).  In

*Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the

Eleventh Circuit Court of Appeals held that "[a]n impairment can

be considered as not severe only if it is a slight abnormality

which has such a minimal effect on the individual that it would

not be expected to interfere with the individual's ability to

work, irrespective of age, education, or work experience." *Brady*

*v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*,

768 F.2d 1273 (11th Cir. 1985); *cf*. 20 C.F.R. § 404.1521(a)

12

(2007).[11]   The Eleventh Circuit Court of Appeals has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  Under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

The Court has reviewed the medical evidence regarding Plaintiff's depression and found nothing there indicating that Parker is unable to work because of her depression.  The office notes from Therapist Carmichael and Psychiatrist Amyx provide no information at all indicating that Parker would be unable to sustain full-time employment.  Plaintiff's claim otherwise is without merit.

Parker next claims that the ALJ did not state what weight he was giving all of the evidence of record.  More specifically, Plaintiff points out that although the ALJ stated that he was giving determinative weight to the opinion of Dr. McGinley, he did not state what weight—if any—he was giving to the opinions of

---

[11]"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

Drs. Faircloth and Schnitzer (Doc. 12, pp. 9-10).  The Court
notes that the ALJ is required to "state specifically the weight
accorded to each item of evidence and why he reached that
decision."  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.
1981).

The Court finds that Plaintiff is correct in her assertion:
the ALJ did not state what weight he was giving the opinions of
Drs. Faircloth and Schnitzer.  The Court notes, however, that
while both doctors provided medical findings, neither gave an
opinion as to Parker's ability to work.[12]  The Court finds that
the evidence provided by these doctors is not inconsistent with
the opinion put forth by Dr. McGinley.  Therefore, the Court
finds that the ALJ's failure to state what evidentiary weight he
assigned to the opinions of Drs. Faircloth and Schnitzer to be,
at most, harmless error.  As such, remand of this action would be
inappropriate.  *See Reeves v. Heckler*, 734 F.2d 519, 526 n.3
(11th Cir. 1984).

Parker next claims that the ALJ did not properly evaluate
her pain (Doc. 12, pp. 10-13).  The standard by which the
Plaintiff's complaints of pain are to be evaluated requires "(1)
evidence of an underlying medical condition and either (2)

---

[12]The Court is aware that Dr. Schnitzer recommended, on November
14, 2004 that Parker not work for a period of three-to-four weeks (Tr.
174).  However, although Schnitzer saw Plaintiff again on January 11,
2005, February 28, and May 25, he did not restrict her in any way,
including her ability to work (Tr. 165, 190, 192).

objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). The Court notes that SSR 96-7p also discusses how a claimant's statements about her symptoms should be evaluated.

The ALJ stated that although Parker's impairments could be expected to produce symptoms, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (Tr. 17). The Court notes that the only medical evidence which would support the severe limitations expressed by Plaintiff came from Psychiatrist Amyx; the Court has already found that the ALJ properly discounted those opinions. The Court also notes that although all of the doctors note

15

Parker's subjective claims of pain and prescribed pain medication for her, only Dr. McGinley expressed an opinion as to Plaintiff's abilities and limitations.  While there is little doubt that Parker suffers some pain from her back impairment, the evidence does not support the debilitating limitations that she asserts. Plaintiff's claim otherwise is without merit.

Parker's final claim is that the ALJ did not ask the VE if her testimony was in conflict with the *DOT* (Doc. 12, p. 13).  The Court notes that SSR 00-4p states the following:  "At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is consistency" in the testimony being given by the VE and information provided in the *DOT*.  "When a VE [] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE [] evidence and information provided in the DOT."  SSR 00-4p.

In his decision, the ALJ specifically states the following: "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles" (Doc. 21).  While the ALJ may be correct in this assertion—and the Court is not expressing an opinion as to whether the ALJ is correct or not—the Court cannot say that the ALJ has fulfilled his obligation under SSR 00-4p.

16

The Court has reviewed the relevant testimony and notes that the ALJ did not ask the VE whether the testimony she was giving was consistent with the *DOT*; likewise, the VE did not volunteer the information.  Nevertheless, although the ALJ has failed to do as the Social Security Ruling instructs him to do, the Court cannot say that this failure is anything more than harmless error.  Parker has not shown any inconsistency in the testimony and the *DOT*.  Furthermore, there has been no challenge to the VE's testimony at all.  As such, the ALJ's failure does not arise to the level of reversible error.

Plaintiff has raised five different claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 30th day of October, 2007.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE